UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JAMES THOMAS,                          )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )   Case No. 4:10CV1909 FRB
                                       )
MICHAEL J. ASTRUE, Commissioner )
of Social Security,                    )
                                       )
          Defendant.                   )

**MEMORANDUM AND ORDER**

This cause is before the Court on plaintiff James Thomas's appeal of an adverse ruling of the Social Security Administration.  All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

**I.  Procedural History**

On January 5, 2007, plaintiff filed an application for Disability Insurance Benefits (also "DIB") pursuant to Title II, and for Supplemental Security Income (also "SSI") pursuant to Title XVI, of the Social Security Act, 42 U.S.C. §§ 401, et seq. (also "Act"), alleging disability beginning July 1, 2007. (Administrative Transcript ("Tr.") 105-112).  Plaintiff's applications were initially denied, and he requested a hearing before an Administrative Law Judge (also "ALJ"), which was held on October 20, 2009.  (Tr. 20-64).  On January 15, 2010, the ALJ issued his decision denying plaintiff's claims.  (Tr. 8-16).

-1-

Plaintiff sought review from defendant agency's Appeals Council which, on August 12, 2010, denied his request for review. (Tr. 1-5). The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II.  Evidence Before the ALJ

A.   <u>Plaintiff's Testimony</u>

During plaintiff's administrative hearing, he was represented by counsel and offered testimony on his own behalf. Plaintiff testified that he was forty-one years of age and was married with four children, aged 22, 19, 16 and 13. (Tr. 26). He testified that his wife did not work. (Tr. 27). Plaintiff testified that he was right-handed, and was five feet, six and one-half inches tall and weighed 313 pounds. (Tr. 29).

Plaintiff testified that he and his wife lived in a ranch-style house with their four children and with plaintiff's mother. (Tr. 26-29). He testified that he and his wife shared the unfinished basement of that house, and that his mother and the four children lived upstairs. (Tr. 29).

Plaintiff testified that he read newspapers, books, magazines, and the Bible, and was able to perform arithmetic, make change, and write. (Tr. 29-30). His only income was a $7.00 to $60.00 offering from the church at which he currently served as a pastor. (Tr. 30). Plaintiff completed 13 years of school, plus an additional two years to become ordained as a Baptist minister. (Tr. 58).

Neither he nor his wife received food stamps or Medicaid,

and they had no health insurance, but plaintiff received health care at a free clinic. (Tr. 31). In 1995, plaintiff filed a workers' compensation claim for a back injury, but could not remember whether there had been a settlement. (Tr. 31-32). Plaintiff had not filed for unemployment compensation. (Tr. 32).

Before becoming a Baptist minister, plaintiff worked for five to six weeks as a loan processor at Bank of America. (Tr. 33). Plaintiff testified that he was terminated after falling asleep during a training class and at his desk. (Id.) Before working at Bank of America, plaintiff worked for five years as a branch manager for a mortgage company called American Home Lending Group. (Tr. 32). When asked why he left this job, plaintiff testified that he was ill but did not know it, and began falling asleep while seeing clients. (Id.) Plaintiff also worked at a restaurant for five years as a kitchen manager and head cook, and also worked for that same restaurant as a certified trainer. (Tr. 33-34, 39). Plaintiff also worked for four years as a floor tech in the surgery department of a hospital, and left this job to "start doing mortgages." (Tr. 35).

Plaintiff testified that he currently served as the pastor of his church, a position which required him to preach a 20-minute sermon on Sunday mornings and teach a Bible class on Wednesday evenings. (Tr. 36). Plaintiff testified that he used to perform many other duties at the church, such as visiting church members who were hospitalized, but had not performed such duties since December of 2007. (Tr. 37-38).

-3-

Plaintiff testified that he suffered from diabetes which affected his ability to work. (Tr. 39). He testified that he began taking insulin by injection in May of 2009, and had taken Metformin[1] from 2007 to May of 2009. (Tr. 39-40). Plaintiff testified that he had hypertension for which he took medication, and had kidney trouble which he had been told was related to his hypertension. (Tr. 41). Plaintiff testified that he needed a referral from his doctor to see a kidney specialist, but had not yet obtained a referral. (Tr. 41-42). Plaintiff did not require dialysis. (Tr. 42). The ALJ asked plaintiff whether a doctor had talked to him about his weight, and plaintiff testified that he had been told to lose weight and had in fact lost 17 pounds. (Id.) Plaintiff testified that he also suffered from sleep apnea and took medication to aid sleep, but had not yet undergone a sleep study and had not been formally diagnosed with sleep apnea. (Tr. 42-43). Plaintiff also testified that he suffered from poor circulation and swelling and sores in his legs, and was therefore unable to sit or stand for a long period of time. (Tr. 44). Plaintiff testified that he had trouble focusing and had difficulty reading and sitting without falling asleep, but did not fall asleep during his sermons. (Tr. 45-46).

Plaintiff testified that he suffered from asthma and had shortness of breath when walking for a long time. (Tr. 46). Plaintiff testified that he smoked cigarettes, and had cut his

---

[1]Metformin is used alone or in combination with other medications to treat type 2 diabetes.
http://www.nlm.nih.gov/medlineplus/druginfo/meds/a696005.html

smoking down to one pack of cigarettes per day.  (Tr. 47).  He testified that he did not consume alcohol or illegal drugs.  (Id.) He stated that his driver's license had been suspended after he fell asleep at the wheel and had an accident.  (Id.)

Plaintiff testified that he did not do any household chores or yard work, and did not go grocery shopping.  (Tr. 48-49). He stated that reading was his hobby.  (Tr. 49).  Plaintiff testified that he could walk for five or ten minutes, and stand for fifteen or twenty minutes.  (Id.)  He stated that he could lift twenty to twenty-three pounds, stating that he could lift his grandchild.  (Tr. 50-51).  When asked how long he could sit, plaintiff replied "I don't sit.  I don't sit.  A half-hour." (Tr. 49).

When asked to describe a typical day, plaintiff replied,

Normal day for me is - - I can't - - I sleep.
I sit at my computer.  I sleep.  I sit at the
computer because I can't sleep laying down.
So when I lay down, I usually get up two or
three times a day.  I usually get up two or
three times a night, I mean.  And I'll get out
the bed and I'll sleep in the chair.  So what
I'll do is, I'll sit in a chair, right, do
what I have to do, but then I have to get up
out of the chair because my legs will swell.
Then I'll lay down to make them go down.  I
have to keep them propped up, or I have to lay
down to make them go  - - to have them go back
down.

(Tr. 50).

Plaintiff testified that he spent about half of an eight-hour period lying down.  (Tr. 53).  He testified that he could not make it through an entire day without lying down.  (Id.)  He

testified that he had changed his Bible study teaching such that he could sit down while teaching. (Tr. 55).

The ALJ then heard testimony from Dolores E. Gonzales, a vocational expert (also "VE"). Ms. Gonzales testified regarding the classifications of plaintiff's past work and, after considering hypothetical questions posed by the ALJ, testified that, with the exception of the ALJ's specification of an individual who needed to prop up his legs, the individuals the ALJ described could perform plaintiff's past work with the exception of the kitchen manager and cook job. (Tr. 60-62). Regarding an individual who needed an accommodation allowing him to prop up his legs, the VE testified that accommodated work did not exist in the open labor market competitively. (Tr. 62). At the request of plaintiff's attorney, the ALJ held the record open for 30 days to allow receipt of additional documentation. (Tr. 63).

B.  Medical Records

On September 1, 2005, plaintiff was seen at Family First Health Care, L.L.C., to establish care. (Tr. 257). Plaintiff complained of experiencing right-sided low back pain over the last two weeks. (Id.) He was tender over the lumbar spine, but examination was otherwise negative. He was given ibuprofen (an over-the-counter pain reliever) and advised to lose weight. (Id.) He was also advised to seek follow-up care for gastrointestinal issues. (Id.)

Plaintiff did not seek medical treatment again until October 15, 2007, when he was seen at St. Mary's Health Center

-6-

("St. Mary's").   It is indicated that plaintiff presented to the emergency room on October 15, 2007 with complaints of bronchitis and that his "throat feels like closing up." (Tr. 191).   He returned to the St. Mary's emergency room on November 20, 2007 with complaints of a urinary tract infection, a 102 degree fever, productive cough, body aches, abdominal cramping, and nausea. (Tr. 213-22).   It was determined that plaintiff had a recent history of E. coli infection. (Tr. 213). Plaintiff did not complain of chest pain or shortness of breath, but did complain of pain in his abdomen. (Id.)

Upon examination, his blood pressure was 121 over 72. (Tr. 214, 222).   There was no edema in his extremities, and no calf tenderness. (Tr. 214).   It was noted that his lungs were negative, and chest x-ray was clear. (Tr. 214, 226).   Plaintiff was admitted on November 21, 2007 with an admitting diagnosis of fever. (Tr. 211).   Plaintiff underwent a renal sonogram on that date which revealed a large left kidney and an absent right kidney, and an apparent lesion on his liver. (Tr. 227).   Plaintiff was diagnosed with fever due to a combination of a urinary tract infection, and clostridium difficile colitis (an intestinal bacterial imbalance). (Tr. 211).   At the time of his discharge, he was noted to be doing well and walking comfortably in the halls, and desired to go home. (Tr. 212).   Plaintiff was instructed to follow up with his own doctor regarding the liver lesion, but it was noted that this did not appear to require emergent evaluation. (Id.)

On October 19, 2007, plaintiff saw Doris Tribune-Brown,

-7-

D.O. and complained of shortness of breath, edema, having to sit up in a chair to sleep, snoring, and low back pain. (Tr. 237, 239). However, examination yielded normal results. (Tr. 237-38). Specifically, examination of plaintiff's extremities revealed no edema and no lesions, and Dr. Tribune-Brown wrote that "motor and sensory intact in both lower extremities." (Tr. 238). Plaintiff's chest was clear, his back was non-tender, he had full range of motion and negative straight leg raise testing, muscle tone was normal, and there were no joint deformities. (Tr. 237). Dr. Tribune-Brown diagnosed plaintiff with hypertension, bronchitis/asthma, morbid obesity, possible obstructive sleep apnea, tobacco abuse, and diabetes. (Id.) She told plaintiff to stop smoking. (Id.) Dr. Tribune-Brown noted that plaintiff's diabetes could be managed with diet, exercise, and weight reduction. (Id.) She advised that plaintiff return in two weeks. (Tr. 238).

Plaintiff returned to Dr. Tribune-Brown on November 2, 2007 for follow-up evaluation. (Tr. 235). Plaintiff reported noticing a change in the edema in his legs with taking the blood pressure medication, lying down to sleep, changing his diet, and cutting down on sodas. (Id.) He reported noticing a difference in his breathing when using Advair.[2] (Id.) Physical examination yielded normal results. (Id.) Specifically, examination of

---

[2]Advair is a combination of Fluticasone and Salmeterol, and is used to prevent wheezing, shortness of breath, and breathing difficulties caused by asthma and chronic obstructive pulmonary disease. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a699063.html

plaintiff's extremities revealed normal muscle tone, normal strength and sensation, and no edema or skin lesions.  (Tr. 235). Dr. Tribune-Brown diagnosed plaintiff with a urinary tract infection and prescribed an antibiotic, and she also gave plaintiff samples of Diovan[3] to try for hypertension management, and noted that his diabetes was managed with diet.  (Tr. 236).  She advised plaintiff to stop smoking, and to return in one month to recheck blood pressure and urine.  (Id.)

Plaintiff presented to the emergency room at St. Mary's on January 24, 2008 with complaints of extreme pain in his right shoulder, stating that he had cut down a bush two to three days ago.  (Tr. 178, 180).  He was prescribed Flexeril[4] and Vicodin.[5] (Tr. 178).

Plaintiff returned to Dr. Tribune-Brown on March 24, 2008 with complaints of blood in his stool "off and on for the past couple of years" and bilateral lower extremity edema.  (Tr. 233). Examination was normal, revealing no edema or lesions in plaintiff's extremities, and normal strength, sensation and coordination.  (Tr. 234).  Dr. Tribune-Brown diagnosed mildly elevated diabetes, stable hypertension, asthma, edema (for which

---

[3]Diovan, or Valsartan, is used alone or in combination with other medications to treat high blood pressure.
http://www.nlm.nih.gov/medlineplus/druginfo/meds/a697015.html

[4]Flexeril, or Cyclobenzaprine, is a muscle relaxant used to relax muscles and relieve pain caused by strains, sprains, and other muscle injuries.
http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a682514.html

[5]Vicodin is a combination of the drugs Acetaminophen and Hydrocodone, and is used to relieve moderate to moderately severe pain.
http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a601006.html

she recommended dietary sodium reduction) and protein in the urine. (Id.)

Plaintiff was seen by Dr. Tribune-Brown on May 12, 2008 and it was noted that he had 2+ edema in his lower extremities bilaterally. (Tr. 261). He was seen again on August 12, 2008 with complaints of lower extremity pain and swelling. (Tr. 261). He had decreased range of motion and pain and tightness in his right knee. (Id.) He was advised to stop drinking soda and to take Tylenol. (Id.) Plaintiff returned to Dr. Tribune-Brown on September 30, 2008. (Tr. 260). Plaintiff's soda consumption was discussed and he was advised to drink water. (Id.)

On June 14, 2008, Tracy Gamayo of Disability Determination Services performed a case analysis. (Tr. 256). It was opined that plaintiff's medical records indicated that his diabetes, asthma and hypertension were well controlled, and that he did not have a severe impairment. (Id.)

The administrative transcript contains records from Grace Hill Neighborhood Health Centers ("Grace Hill"), where plaintiff was seen by Wanda Trotter, MNP, a nurse practitioner, on April 6, 2009, May 5, 2009 and May 12, 2009. (Tr. 267-74). Plaintiff was treated for diabetes management, and was instructed regarding testing his blood glucose levels, administering his own insulin shots, and diabetic foot care. (Id.) He was also given medication for asthma. (Id.) When plaintiff was seen by Ms. Trotter on April 6, 2009, his lungs were clear with no crackle or wheeze and he was noted to be obese; and when he was seen on  May 12, 2009, his lungs

were clear; he was noted to be obese; and he had no pedal edema. (Tr. 273). Ms. Trotter's treatment notes also reference hypertension. (Tr. 267-74). Laboratory testing performed on April 6, 2009 revealed normal protein levels. (Tr. 279). The Grace Hill records indicate that plaintiff was prescribed insulin, Actos,[6] Simvastin,[7] Diovan, and Metformin. (Tr. 283).

On September 15, 2009, Dr. Tribune-Brown completed a form entitled "Physician's Assessment For Social Security Disability Claim." (Tr. 284). Therein, Dr. Tribune-Brown noted plaintiff's diagnoses as diabetes, diabetic nephropathy (kidney damage secondary to diabetes), renal agenesis (the absence of one kidney), hypertension, asthma, edema, protein in the urine, and obesity. (Id.) Dr. Tribune-Brown wrote that plaintiff would need to rest every 30 minutes during an eight-hour workday. (Id.) In a second version of the same form, Dr. Tribune-Brown added her opinion that plaintiff was "unable to work a full time job in my professional opinion 10/21/09." (Tr. 289).

Records from Saint Louis ConnectCare ("ConnectCare") indicate that plaintiff presented on October 7, 2009 for an echocardiogram, which revealed mild enlargement of the left ventricle, but was otherwise normal. (Tr. 286-87).

On October 23, 2009, plaintiff was seen at ConnectCare

---

[6]Actos, or Pioglitazone, is used with diet and exercise to treat type 2 diabetes.  www.nlm.nih.gov/medlineplus/druginfo/meds/a699016.html

[7]Simvastin is ued with lifestyle changes to reduce the amount of LDL cholesterol and triglycerides in the blood and increase the amount of HDL cholesterol in the blood. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a692030.html

for evaluation of sleep apnea. (Tr. 292). He stated that he fell asleep while watching television and at a stop light, and "anytime I'm not doing something." (Tr. 293). He stated that he slept sitting up. (Id.) Chest x-ray was negative. (Tr. 297). Examination revealed no edema. (Tr. 292). Bilateral lower extremity venous Doppler study performed on November 4, 2009 revealed no evidence of deep vein thrombosis. (Tr. 301). It was noted that the veins were easily compressible and there was normal augmentation and normal flow seen on the Doppler examination. (Id.)

On November 12, 2009, plaintiff underwent pulmonary function testing at Washington University School of Medicine. (Tr. 304). Testing revealed a "mild restrictive" ventilatory defect, and a "mild impairment" of oxygen exchange at rest. (Tr. 304). Pulmonary function testing performed on this date revealed sufficient blood oxygen at rest and while walking. (Tr. 305). Test results were also noted to be consistent with plaintiff's "current heavy smoking status." (Tr. 304).

On December 1, 2009, plaintiff was seen by Yo-El Ju, M.D., at the Washington University School of Medicine Sleep Disorders Center. (Tr. 311-15). Plaintiff reported smoking one pack of cigarettes per day since age 15, and reported drinking ten cups of coffee per day, "predominately at night when he can't sleep." (Tr. 312). Plaintiff complained of sinus congestion, difficulty breathing, coughing, wheezing. (Id.) He stated that he could not walk a block without stopping to rest, and complained of

shortness of breath with exertion. (Id.) Upon examination, Dr. Ju noted that plaintiff's lungs were clear, and his heart rate was normal and regular. (Id.) Dr. Ju noted that plaintiff had 3+ pitting edema to his knees, but normal strength in all of his extremities. (Tr. 312). It was noted that he was morbidly obese. (Id.) Dr. Ju opined that plaintiff's symptoms were consistent with sleep apnea. (Id.) Dr. Ju noted that plaintiff's weight was potentially a contributing factor. (Id.) Dr. Ju also noted that plaintiff had poor sleep hygiene, in that he had an irregular bedtime, lacked a regular place to sleep, and drank many cups of coffee, especially at night. (Tr. 312). Dr. Ju noted that he discussed with plaintiff the importance of maintaining a regular schedule and abstaining from caffeine. (Id.) Dr. Ju recommended that plaintiff undergo a sleep study using a Continuous Positive Airway Pressure ("C-PAP") device, and advised plaintiff to abstain from driving until his evaluation. (Id.) Plaintiff asked whether he could continue to sleep sitting up, and Dr. Ju informed him that would be fine. (Id.)

On December 9, 2009, Wanda Trotter wrote that plaintiff had been treated at Grace Hill for hypertension, diabetes, morbid obesity, "Daytime Somnelence" [sic] suspected to be related to sleep apnea, bronchial asthma, and hyperlipidemia. (Tr. 308). Ms. Trotter wrote, "In my professional opinion, Mr. Thomas is permanently unable to return to his previous employment as a mortgage broker or restaurant manager due to daytime somnellence [sic] (falling asleep)." (Id.)

On December 14, 2009, a sleep study was performed at the Washington University School of Medicine Sleep Disorders Center. (Tr. 314).  Plaintiff was offered a wedge pillow to use to elevate his head, but plaintiff instead opted to "sleep sitting up on the edge of the bed."  (Id.)  Testing revealed "extremely severe obstructive sleep apnea syndrome." (Tr. 314-15).  However, use of the Continuous Positive Airway Pressure (CPAP) machine revealed that it was an effective treatment for plaintiff's sleep apnea syndrome.  (Tr. 315).

### III.   The ALJ's Decision

The ALJ determined that, although plaintiff had worked part-time as a minister, plaintiff had not engaged in substantial gainful activity since his alleged onset date.  (Tr. 13).  The ALJ determined that plaintiff had the severe impairments of diabetic nephropathy, asthma, and obstructive sleep apnea, and that plaintiff's hypertension was considered a symptom of nephropathy. (Id.)

The ALJ analyzed the evidence of record and acknowledged all of the findings therein, and concluded that the totality of the medical evidence did not support a finding of disability.  (Tr. 14).  The ALJ determined that plaintiff had retained the residual functional capacity (also "RFC") to perform medium work, except that he could stoop, crouch, kneel, balance, and climb stairs or ramps on only an occasional basis; was unable to crawl or climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to extreme cold, wetness, fumes, odors, dust, and gases.  (Tr. 14).

-14-

Noting the VE's testimony, the ALJ determined that plaintiff could perform his past relevant work as a loan processor, mortgage broker, branch manager, and trainer as those jobs were customarily performed in the national economy.  (Tr. 16).

## IV.   Discussion

To be eligible for Social Security Disability Insurance Benefits and Supplemental Security Income under the Social Security Act, a claimant must prove that he is disabled.  <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001); <u>Baker v. Secretary of Health & Human Servs.</u>, 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  <u>See</u> 20 C.F.R. §§ 404.1520, 416.920; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant

-15-

is engaged in substantial gainful activity.  If so, benefits are denied.  Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities. If the claimant's impairment(s) is not severe, then he is not disabled.  The Commissioner then determines whether the claimant's impairments meet or are equivalent to any impairments listed in 20 C.F.R., Subpart P, Appendix 1.  If so, the claimant is conclusively disabled.  At the fourth step, the Commissioner establishes whether the claimant can perform his past relevant work.  If so, the claimant is not disabled.  Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If not, the claimant is declared disabled and becomes entitled to disability benefits.

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance but enough that a reasonable person would consider adequate to support the conclusion.  Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001).  This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."  Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).  "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."  Id. (internal

-16-

quotation marks and citations omitted).

        To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

> 1.   The credibility findings made by the ALJ.
>
> 2.   The plaintiff's vocational factors.
>
> 3.   The medical evidence from treating and consulting physicians.
>
> 4.   The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.
>
> 5.   Any corroboration by third parties of the plaintiff's impairments.
>
> 6.   The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

        The Court must also consider any evidence which fairly detracts from the Commissioner's decision. Coleman, 498 F.3d at 770; Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. Pearsall, 274 F.3d at 1217 (citing Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a

whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." Weikert v. Sullivan, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); see also Jones ex rel. Morris v. Barnhart, 315 F.3d 974, 977 (8th Cir. 2003).

Plaintiff claims that the ALJ's decision is not supported by substantial evidence on the record as a whole. Specifically, plaintiff first contends that the ALJ failed to properly consider plaintiff's obesity and diabetes, stating that although these conditions were mentioned in the medical evidence, "not one time in the decision did the ALJ even mention obesity or diabetes mellitus," (Docket No. 15 at 7), resulting in the omission of these conditions from the ALJ's RFC determination. Secondly, plaintiff contends that the ALJ failed to properly consider the opinions of Dr. Tribune-Brown and Wanda Trotter. Thirdly, plaintiff argues that the ALJ erred in considering plaintiff's part-time work activity, inasmuch as the ALJ considered plaintiff's part-time work as a minister when considering his daily activities. In response, the Commissioner contends that the ALJ's decision is supported by substantial evidence on the record as a whole.

A.   Credibility Determination

The undersigned will consider plaintiff's third argument first.   In the case at bar, in conjunction with considering plaintiff's activities of daily living as part of his credibility analysis, the ALJ considered the fact that plaintiff had worked part-time as a minister.  (Tr. 15).  Having noted this, the ALJ

wrote that this was "some evidence of an ability to work." (Id.)
Plaintiff contends that it was improper for the ALJ to consider
this work activity.  Review of the ALJ's decision, however, reveals
that he properly considered all of the evidence of record and noted
numerous inconsistencies in the record detracting from plaintiff's
credibility, and that his consideration of plaintiff's work
activity, and his credibility determination as a whole, was proper.

Testimony regarding pain is necessarily subjective in
nature, as it is the claimant's own perception of the effects of
his alleged impairments.  Halpin v. Shalala, 999 F.2d 342, 346 (8th
Cir. 1993).  Because of the subjective nature of physical symptoms,
and the absence of any reliable technique for their measurement, it
is difficult to prove, disprove or quantify their existence and/or
overall effect.  Polaski v. Heckler, 739 F.2d 1320, 1321-22 (8th
Cir. 1984).  In Polaski, the Eighth Circuit addressed this
difficulty and set forth the following standard:

> The absence of an objective medical basis
> which supports the degree of severity of
> subjective complaints alleged is just one
> factor to be considered in evaluating the
> credibility of the testimony and complaints.
> The adjudicator must give full consideration
> to all of the evidence presented relating to
> subjective complaints, including the
> claimant's prior work record, and observations
> by third parties and treating and examining
> physicians relating to such matters as: (1)
> the claimant's daily activities; (2) the
> duration, frequency and intensity of the pain;
> (3) precipitating and aggravating factors; (4)
> dosage, effectiveness and side effects of
> medication; (5) functional restrictions.

> Id. at 1322.

Although the ALJ may not accept or reject the claimant's subjective complaints based solely upon personal observations or upon the lack of objective medical evidence, the ALJ may discount them if there are inconsistencies in the evidence as a whole.  Id.; see also Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008) (the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence).  The "crucial question" is not whether the claimant experiences symptoms, but whether his credible subjective complaints prevent him from working.  Gregg v. Barnhart, 354 F.3d 710, 713-14 (8th Cir. 2003).  The ALJ is not required to discuss each Polaski factor as long as "he acknowledges and considers the factors before discounting a claimant's subjective complaints."  Moore v. Astrue, 572 F.3d 520, 524 (8th Cir. 2009) (citing Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005); see also Samons v. Apfel, 497 F.3d 813, 820 (8th Cir. 2007) (citing Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (while the Polaski factors should be taken into account, "we have not required the ALJ's decision to include a discussion of how every Polaski 'factor' relates to the claimant's credibility."))  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination."  Juszczyk v. Astrue, 542 F.3d 626, 632 (8th Cir. 2008); see also Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001).  The credibility of a claimant's subjective complaints is primarily for the ALJ to decide, and this

Court considers with deference the ALJ's decision on the subject. Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005).

In the case at bar, in assessing the credibility of plaintiff's subjective complaints, the ALJ cited the Regulations and the Social Security Rulings corresponding with Polaski and credibility determination, and listed the relevant factors. The ALJ noted that the record showed that, although plaintiff alleged disability beginning July 1, 2007, the record failed to document any treatment for an alleged impairment in July, August or September of 2007. See Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996) (concluding that failure to seek regular medical treatment is inconsistent with complaints of disabling pain). It was proper for the ALJ to consider this, inasmuch as it is not apparent that this is a case in which a lack of medical insurance or ability to afford treatment can excuse the failure to seek regular treatment. As the Eighth Circuit has noted, while evidence of financial hardship may justify a claimant's failure to obtain treatment or take prescription medication, it is not an automatic excuse. Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992) (citing Tome v. Schweiker, 724 F.2d 711, 714 (8th Cir. 1984)); Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989); Brown v. Heckler, 767 F.2d 451, 453 n. 2 (8th Cir. 1985). Plaintiff does not allege, nor does the record support the conclusion, that he did not seek treatment during this time due to a lack of medical insurance or ability to pay.

The ALJ noted that, although an examination performed in mid-October 2007 revealed edema which was apparently due to renal proteinuria, examinations performed by treating physicians in late October 2007 and November 2007 demonstrated no evidence of edema and also demonstrated normal protein levels.  The ALJ also noted that Dr. Tribune-Brown's March 2008 examination revealed no edema. The ALJ noted that, while plaintiff was observed to have edema in May and September of 2008, Dr. Tribune-Brown's August 2008 medical report showed no edema; examinations conducted in 2009 at Grace Hill showed no edema; an examination performed at ConnectCare in October 2009 showed no edema and an April 2009 laboratory study showed that his protein results were normal.  In addition, bilateral lower extremity venous Doppler study performed on November 4, 2009 revealed no evidence of deep vein thrombosis. Regarding asthma, the ALJ noted that pulmonary function testing revealed only mild restrictions, and that respiratory examination revealed nothing more than decreased breath sounds.  While the lack of objective medical evidence to support the degree of severity of alleged symptoms is not dispositive to the question of a claimant's credibility, it is an important factor and may be properly considered by the ALJ.  20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); see also Kisling v. Chater, 105 F.3d 1255, 1257-58 (8th Cir. 1997).

The ALJ noted that, while plaintiff was diagnosed with sleep apnea in December of 2009, it was noted that a CPAP device effectively treated this condition.  Similarly, the ALJ noted that

plaintiff admitted that his hypertension could be controlled with medication.  The ALJ also noted that plaintiff continued to smoke heavily in spite of allegations of asthma, and the record reflects that plaintiff's doctors repeatedly told him to stop smoking.  The ALJ acted within his authority in considering this evidence as detracting from plaintiff's credibility.  See Wheeler v. Apfel, 224, F.3d 891, 895 (8th Cir. 1996) (citing Kisling, 105 F.3d at 1257) (impairments which are controllable or amendable to treatment, including certain respiratory problems, do not support a finding of disability, and failure to follow a prescribed course of remedial treatment, including cessation of smoking, without good reason is grounds for denying an application for benefits).

In addition, during the time plaintiff was complaining of daytime somnolence, Dr. Ju noted that plaintiff had poor sleep hygiene.  Dr. Ju noted that plaintiff failed to observe a regular bedtime, lacked a regular place to sleep, and drank many cups of coffee in the middle of the night.  Dr. Ju wrote that he had discussed with plaintiff the importance of maintaining a regular schedule and abstaining from caffeine to allow him to sleep well. From this, it appears that plaintiff's daytime somnolence was caused at least in part by his own poor habits.  The undersigned also notes that plaintiff's allegations of an inability to sit are somewhat undermined by Dr. Ju's observation that plaintiff sat on the edge of the bed to sleep during the sleep study and asked Dr. Ju whether he may continue to sleep sitting up.

-23-

The ALJ also noted that the record indicated that plaintiff seldom required physician intervention for the conditions he claims render him completely disabled and unable to perform any work.   The ALJ noted that plaintiff denied edema, shortness of breath and blurred vision when he saw Dr. Tribune-Brown in late 2007 and early 2008.   The fact that plaintiff did not regularly complain of symptoms he now alleges render him completely disabled and unable to perform any work is evidence that provides support for the ALJ's adverse credibility determination.   See Anderson v. Shalala, 51 F.3d 777, 780 (8th Cir. 1995) (citing Stephens v. Shalala, 46 F.3d 37, 38 (8th Cir. 1995) (per curiam) (discrediting later allegations of back pain when no complaints made about such pain while receiving other treatment)).

The ALJ also considered medication side effects, noting that plaintiff only complained of a dry mouth.   The ALJ also noted that plaintiff testified that "weather" aggravates his breathing condition, but that "many jobs are performed indoors."  (Tr. 15).

Finally, as plaintiff notes in his Brief in Support of his Complaint, the ALJ considered the fact that plaintiff was working part-time as a minister, and wrote that he considered this "some evidence of an ability to work." (Tr. 15).  The ALJ did not, as plaintiff suggests, use this part-time work as a foundation for his conclusion that plaintiff could work eight hours per day, five days per week.  That conclusion is belied by the fact that the ALJ stated at the outset of his decision that plaintiff's work as a

-24-

minister was not substantial gainful activity; that the ALJ wrote that he was considering plaintiff's part-time work as merely "some" evidence of an ability to work; and because the ALJ considered many other factors and noted several inconsistencies in the record in discrediting plaintiff's allegations of symptoms precluding all work.  Despite plaintiff's argument, the ALJ in this case properly considered plaintiff's part-time work as but one of several factors that detracted from his subjective allegations of symptoms precluding all work.  See Goff, 421 F.3d at 792 (the ALJ properly considered, as one factor detracting from the claimant's credibility, the fact that she worked part-time as a kitchen aide throughout the time she claimed she was disabled).

A review of the ALJ's credibility determination shows that, in a manner consistent with and required by Polaski, he considered plaintiff's subjective complaints on the basis of the entire record before him, and set forth numerous inconsistencies detracting from plaintiff's credibility.  An ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole.  Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990).  Because the ALJ considered the Polaski factors and discredited plaintiff's subjective complaints for a good reason, that decision should be upheld.  Hogan, 239 F.3d at 962.

B.   Opinion Evidence

As his second claim, plaintiff argues that the ALJ failed to properly consider the opinion evidence of record which was

-25-

offered by Dr. Tribune-Brown and nurse practitioner Wanda Trotter.

As noted above, Dr. Tribune-Brown opined that plaintiff would need to rest every 30 minutes during an eight-hour work day and that plaintiff was "unable to work a full time job in [her] professional opinion." (Tr. 289).   Plaintiff argues that the ALJ failed to properly consider Dr. Tribune-Brown's opinion.  Review of the record reveals no error.

The opinion of a treating physician is accorded special deference under the social security regulations.   The regulations provide that a treating physician's opinion regarding an applicant's impairment will be granted "controlling weight," provided the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Greater weight will be given to the opinion of a treating source who has seen the claimant "a number of times and long enough to obtain a longitudinal picture" of the claimant's impairment.   20 C.F.R. §§ 404.1527(d)(2)(i) and 416.927(d)(2)(i).  This rule is premised, at least in part, on the concept that a physician with a longstanding treatment relationship with the claimant is more familiar with a claimant's condition than are other physicians.  Thomas v. Sullivan, 928 F.2d 255, 259 n. 3 (8th Cir. 1991).  However, the Eighth Circuit has cautioned that a treating physician's opinion "do[es] not automatically control, since the record must be

evaluated as a whole." <u>Bentley v. Shalala</u>, 52 F.3d 784, 785-86 (8th Cir. 1995).  Accordingly, an ALJ's decision to discount or even disregard the opinion of a treating physician has been upheld where other medical assessments "are supported by better or more thorough medical evidence," <u>Rogers v. Chater</u>, 118 F.3d 600, 602 (8th Cir. 1997), or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions, <u>see</u> <u>Cruze v. Chater</u>, 85 F.3d 1320, 1324-25 (8th Cir. 1996).  Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must "always give good reasons" for the particular weight given to a treating physician's evaluation. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); <u>Prosch v. Apfel</u>, 201 F.3d 1010, 1012-13 (8th Cir. 2000).

In his decision, the ALJ stated that he was giving Dr. Tribune-Brown's opinions slight weight because she had last seen plaintiff in September 2008; because her opinion was not supported by her overall examination results; and because her opinion was inconsistent with other evidence of record. (Tr. 15).  The ALJ's decision is supported by the record.

Dr. Tribune-Brown's findings upon examination, and the ALJ's discussion of her treatment records, are discussed, <u>supra</u>. Briefly, however, as the ALJ noted, despite the fact that Dr. Tribune-Brown assessed severe limitations based upon edema, her examinations failed to consistently reveal the presence of edema. This was true in March of 2008 and, while edema was present in May

-27-

of 2008, her August 2008 report showed no edema.   Regarding other conditions, plaintiff denied edema, shortness of breath and blurred vision when he saw Dr. Tribune-Brown in late 2007 and early 2008. Regarding hypertension, the record establishes that this condition was controlled with medication.   Dr. Tribune-Brown's treatment notes simply fail to support the degree of limitation she indicated in her opinion.   "It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."   <u>Davidson v. Astrue</u>, 578 F.3d 838, 842 (8th Cir. 2009).

Dr. Tribune-Brown's opinions are also inconsistent with the other medical evidence of record.   Examinations conducted in 2009 at Grace Hill demonstrated an absence of edema, as did an examination performed at ConnectCare in October of 2009, and an April 2009 laboratory study showed that plaintiff's protein results were normal.   Although Dr. Tribune-Brown based her opinions in part upon shortness of breath, chest x-ray performed in October of 2009 failed to reveal evidence of active disease; Spirometry performed in November of 2009 revealed only mild findings, and pulmonary testing showed adequate blood oxygen.   Inconsistency with other evidence of record is sufficient to discount a treating physician's opinion.   <u>Davidson v. Astrue</u>, 501 F.3d 987, 991 (8th Cir. 2007) (citing <u>Goff</u>, 421 F.3d at 790-791).   Review of the ALJ's decision reveals that he properly gave Dr. Tribune-Brown's opinions slight weight.

As noted above, Nurse Trotter opined that plaintiff would be unable to return to his previous work as a mortgage broker or restaurant manager due to daytime somnolence.  Plaintiff suggests that the ALJ failed to properly consider Nurse Trotter's opinion, and erroneously stated that she was not an "acceptable medical source" as such is defined in the regulations.  Review of the ALJ's decision reveals no error.

The Regulations provide that evidence to establish an impairment must come from "acceptable medical sources," which are defined as licensed medical or osteopathic physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. §§ 404.1513(a)(1)-(5); 416.913(a)(1)-(5).  In his decision, the ALJ correctly noted that a nurse practitioner was not an "acceptable medical source" as defined the regulations.  As the ALJ acknowledged, the Regulations define Nurse Practitioners (like Nurse Trotter) as "other sources" whose opinions may be used to show the severity of an impairment and how it affects the claimant's ability to work.  20 C.F.R. §§ 404.1513(d)(1); 416.913(d)(1).  Despite plaintiff's argument, the ALJ's treatment of Nurse Trotter's opinion is entirely consistent with the Regulations.  The ALJ did not ignore her opinion; he merely stated that she was not an acceptable medical source for establishing the nature and severity of an impairment.

In addition, the undersigned notes that the record

-29-

reflects that Nurse Trotter examined plaintiff on only two occasions.  The opinion of a medical source who examined a claimant only twice is generally not considered with the deference given to a treating source under the regulations.  See Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004).  In addition, while Nurse Trotter's opinion that plaintiff could not return to his work was based on plaintiff's daytime somnolence, the record establishes that Dr. Ju subsequently diagnosed plaintiff with sleep apnea which responded to use of a CPAP device.  Dr. Ju also indicated that plaintiff's inability to sleep well at night was due at least in part to his poor sleep hygiene and his poor habit of consuming many cups of coffee during the night.  An ALJ may discount medical opinions that are contradicted by other evidence in the record. See Weber v. Apfel, 164 F.3d 431 (8th Cir. 1999).

Also significant is the fact that the opinions offered by Dr. Tribune-Brown and Nurse Trotter were not of the sort normally entitled to deference.  Dr. Tribune-Brown opined in part that plaintiff was unable to work a full-time job.  Nurse Trotter opined that plaintiff could not return to his past work.  The undersigned notes that physician and other medical source opinions that a claimant is disabled or unable to work, even when offered by a treating physician, are not the types of medical opinions that are entitled to deference because they involve issues specifically reserved for the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e); Robson v. Astrue, 526 F.3d 389, 393 (8th Cir. 2008)

-30-

(citing <u>House v. Astrue</u>, 500 F.3d 741, 744 (8th Cir. 2007)); <u>see also</u> <u>Ellis v. Barnhart</u>, 392 F.3d 988, 994 (8th Cir. 2005) ("A medical source opinion that an applicant is "disabled" or "unable to work," however, involves an issue reserved for the Commissioner and therefore is not the type of "medical opinion" to which the Commissioner gives controlling weight"); <u>Stormo v. Barnhart</u>, 377 F.3d 801, 806 (8th Cir. 2004) ("Treating physicians' opinions are not medical opinions that should be credited when they simply state that a claimant can not be gainfully employed, because they are merely opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner.")

Review of the ALJ's decision reveals that he properly considered the opinion evidence offered by Dr. Tribune-Brown and Nurse Trotter, and properly explained his reasons for the weight given. Substantial evidence supports his treatment of Nurse Trotter's opinion and his decision to give little weight to Dr. Tribune-Brown's opinion.

C. <u>The ALJ's Evaluation of Plaintiff's Impairments</u>

As to plaintiff's first claim, that the ALJ did not properly consider his conditions of obesity and diabetes, the ALJ in this case identified plaintiff's severe impairments as diabetic nephropathy, asthma, and obstructive sleep apnea, and found that plaintiff's hypertension was considered a symptom of nephropathy. Plaintiff argues that the ALJ erred in failing to conclude that his obesity and diabetes were severe impairments, stating that the ALJ

-31-

failed to mention these conditions.  Review of the record reveals
no error.

An impairment is "severe" if it significantly limits an
individual's ability to perform basic work activities.  See 20
C.F.R. §§ 404.1520(c); 416.920(c).  An impairment is "nonsevere"
when medical or other evidence establishes only a slight
abnormality that would have no more than a minimal impact on an
individual's ability to work.  See 20 C.F.R. §§ 404.1521(a);
416.921(a).

In his decision, the ALJ acknowledged that plaintiff was
alleging disability due to diabetes, among other conditions.  The
ALJ then considered the evidence of record, including plaintiff's
testimony, medical information from all of plaintiff's medical
treatment providers, the results of medical testing, and the
opinion evidence of Dr. Tribune-Brown and Nurse Trotter.  There is
no record evidence indicating that diabetes mellitus significantly
limited plaintiff's ability to perform basic work activities beyond
that which was identified by the ALJ.  While plaintiff correctly
notes that he was diagnosed with diabetes mellitus and prescribed
insulin, he does not identify any evidence that the ALJ failed to
consider that documents that diabetes mellitus significantly
limited his ability to perform basic work activities beyond that
identified by the ALJ.  Furthermore, as discussed in detail above,
the ALJ properly discounted the opinion evidence indicating that
plaintiff required frequent rest periods and that he was unable to

-32-

work, and based his decision in part upon his determination that
plaintiff's allegations were not entirely credible, a decision that
is supported by substantial evidence on the record as a whole.
Finally, as the Commissioner correctly notes, the ALJ identified
"diabetic nephropathy" as one of plaintiff's severe impairments.
There is therefore no merit to the argument that the ALJ failed to
consider plaintiff's diabetes mellitus and/or that the effects of
this condition were omitted from the RFC determination. The
undersigned concludes that the ALJ's decision properly considered
diabetes mellitus, and that his decision properly described and
incorporated the effects of diabetes on plaintiff's ability to
perform basic work activities.

Plaintiff also complains that the ALJ erred in failing to
find that his obesity was a severe impairment.  Review of the
record reveals no error.  Plaintiff did not allege obesity as a
basis for disability when he applied for benefits, nor did he
testify that his weight caused any functional restrictions. Davis
v. Barnhart, 197 Fed. Appx. 521 (8th Cir. 2006) (ALJ did not err in
failing to consider the claimant's weight as an impairment because
the claimant did not allege obesity in her application or testify
about limitations resulting from her weight).  In addition, while
Dr. Tribune-Brown indicated that her opinion regarding plaintiff's
functional restrictions was based in part on plaintiff's obesity,
the ALJ properly discounted that opinion, and none of plaintiff's
other treating doctors opined that plaintiff's obesity imposed any

functional restrictions.  See Forte v. Barnhart, 377 F.3d 892, 896 (8th Cir. 2004) (ALJ did not err in failing to consider obesity when treating doctors noted that claimant was obese but did not opine that his obesity imposed any additional work-related limitations, and claimant did not testify that his obesity imposed additional restrictions);

Plaintiff states that he mentioned obesity in his brief to the ALJ.  (Tr. 165-66).  In that brief, while plaintiff did discuss a Social Security Ruling on the subject of the consideration of obesity in disability cases, he did not point to any evidence in his administrative record or make any arguments specific to his case tending to support the conclusion that his obesity should be considered a severe impairment.  See (Id.) Plaintiff's brief does not alter the fact that he failed to allege obesity as a basis for disability and failed to testify that obesity caused any limitations on his ability to function.  See Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir. 2003) (claim of obesity waived on appeal where the claimant did not allege any limitation from the impairment in his application or during his hearing).  Furthermore, the ALJ did find that plaintiff suffered from other severe impairments that were arguably related to his obesity, including sleep apnea and hypertension.  The fact that the ALJ in this case did not discuss obesity as an impairment does not require remand.  See Box v. Shalala, 52 F.3d 168, 171 (8th Cir. 1995) ("In light of the evidence of record, the fact that the

[ALJ's] decision does not discuss obesity as an impairment is not fatal.")

Plaintiff also states that the ALJ failed to consider his impairments in combination.  However, in his decision, the ALJ listed all of the impairments upon which plaintiff was basing his claim of disability, and specifically noted his obligation to consider plaintiff's impairments in combination.  (Tr. 12).  This analysis was sufficient.  "To require a more elaborate articulation of the ALJ's thought processes would not be reasonable."  Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992) (citing Gooch v. Secretary of H.H.S., 833 F.2d 589, 592 (6th Cir. 1987)).

In his brief, plaintiff also suggests that, because the ALJ discredited the opinions of Dr. Tribune-Brown and Nurse Trotter, he could not have ascertained plaintiff's ability to work without engaging in medical conjecture.  This statement is without merit.  The opinions the ALJ discredited were those stating that plaintiff required certain rest periods, was unable to work full-time, and could not return to his past work.  The fact that the ALJ discredited these opinions does not strip the decision of medical support.  In his decision, the ALJ discussed all of the medical evidence of record, including that of Dr. Tribune-Brown and Nurse Trotter.  The ALJ also conducted a legally sufficient credibility determination.  Having considered all of the medical and other evidence of record, the ALJ formulated an RFC based thereon that incorporated those limitations that the ALJ determined were

credible and which were supported by the medical evidence.

Finally, plaintiff suggests that the ALJ should have further developed the record. Plaintiff does not, however, explain the manner in which the ALJ should have done so. In this case, there is no indication that the ALJ felt unable to make the assessment he did, and, as explained <u>supra</u>, substantial evidence supports his decision. The available evidence of record provided an adequate basis for determining the merits of plaintiff's disability claim, and the ALJ was therefore not required to order additional testing or to re-contact any treatment providers. <u>See Sultan v. Barnhart</u>, 368 F.3d 857, 863 (8th Cir. 2004). An ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision. <u>Anderson</u>, 51 F.3d at 779.

Plaintiff also states that the ALJ failed to ask the vocational expert to consider the effects of diabetes mellitus and obesity on plaintiff's residual functional capacity. However, while plaintiff names the conditions he believes were omitted from the hypothetical questions, he does not specify the functional restrictions stemming therefrom that he believes were omitted from the hypothetical questions, nor does he offer any detail regarding what hypothetical question(s) he believes should have been presented to the VE.

"A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial

evidence in the record and accepted as true" by the ALJ.   Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir.2001).   "The hypothetical question must capture the concrete consequences of the claimant's deficiencies."   Id.   However, "the ALJ may exclude any alleged impairments that [he] has properly rejected as untrue or unsubstantiated."   Id.; see also Cruse, 867 F.2d at 1187 (ALJ must include only those impairments supported by reasonable and substantial evidence in a hypothetical question posed to a vocational expert).

Review of the record reveals that the ALJ included in the hypothetical questions posed to the VE those impairments that he accepted as true and which were supported by substantial evidence on the record as a whole.   As discussed above, the ALJ properly weighed the opinion evidence of record, and the hypothetical questions the ALJ posed to the VE adequately represented plaintiff's limitations as properly assessed by the ALJ.   See Rogers, 118 F.3d at 602 (finding the ALJ appropriately weighed the treating physician's opinion, and the hypothetical question adequately represented the limitations of the claimant).   In addition, as explained above, the ALJ conducted a legally sufficient credibility determination, and was therefore not required to present to the VE limitations he did not accept as true.   Hunt, 250 F.3d at 625 (the ALJ may properly exclude impairments that he has properly rejected as untrue or unsubstantiated).

-37-

Review of the ALJ's decision reveals that he properly exercised his discretion and acted within his statutory authority in evaluating all of the evidence on the record as a whole. For this and all of the foregoing reasons, the undersigned determines that the ALJ's decision is supported by substantial evidence on the record as a whole, and must therefore be affirmed. See Weikert, 977 F.2d at 1252.

Therefore, for all of the foregoing reasons, on the claims that plaintiff raises,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed, and plaintiff's Complaint is dismissed with prejudice.

A separate Judgment shall be filed herewith.


_Frederick R. Buckles_
Frederick R. Buckles
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of March, 2012.

–38–